IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


HARRY L. BIERLEY,

      Plaintiff,

        vs.

MICHAEL GROLUMOND, et al.,

      Defendants.
_____

Civil Action

No. 05-49 E


    Transcript of proceedings on May 25, 2005,
United States District Court, Pittsburgh, Pennsylvania,
before Thomas M. Hardiman, District Judge


APPEARANCES:

For the Plaintiff:      Pro Se


For the Defendant:      Patrick M. Carey, Esq.
                      Mary E. Butler, Esq.


Court Reporter:        Richard T. Ford, RMR, CRR
                      1023-B U.S. Courthouse
                      Pittsburgh, PA  15219
                      (412) 261-0802


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          (Proceedings of May 27, 2005).

2          (In chambers; all counsel and Mr. Bierley present via

3     telephone).

4          THE COURT:  Good afternoon, gentlemen, and

5     Ms. Butler.  We have Mr. Bierley representing himself,

6     correct?

7          MR. BIERLEY:  Yes, sir.

8          THE COURT:  And Mr. Carey and Ms. Butler for the

9     defense, is that right?

10         MR. CAREY:  Yes, Your Honor.

11         MS. BUTLER:  That's right, Your Honor.

12         THE COURT:  I have a Court Reporter with me in

13    chambers and we are on the record.  I would ask that each of

14    you identify yourselves by name before you speak.

15         I have had an opportunity to study the complaint

16    and the motion to dismiss and, Mr. Bierley, according to your

17    complaint on February 5th, 2005 --

18         MR. BIERLEY:  Excuse me, sir, that was corrected to

19    February 3rd.  I was so upset I put a wrong date on there.

20         THE COURT:  All right.  On February 3rd, 2005, you

21    appeared in the Erie County Courthouse to meet with the Deputy

22    Prothonotary, correct?

23         MR. BIERLEY:  Not quite, but I went down there to

24    take care of some business at the Prothonotary's Office on a

25    civil matter between me and another person.

1          THE COURT:  All right.  You did not provide any

2     prior notice to your parole officer, correct?

3          MR. BIERLEY:  Right.  And I did not have any reason

4     to believe I should.

5          THE COURT:  Okay.  And you were asked to leave the

6     courthouse, correct?

7          MR. BIERLEY:  I was ordered to leave the

8     courthouse, sir.

9          THE COURT:  You were ordered to leave the

10    courthouse.  And --

11         MR. BIERLEY:  I did.

12         THE COURT:  And you did leave the courthouse.

13         MR. BIERLEY:  Yes, sir.

14         THE COURT:  All right.  Well, the record indicates

15    that you went to trial before Judge DiSantis, correct?

16         MR. BIERLEY:  Yes, sir.

17         THE COURT:  And as part of the sentence that Judge

18    DiSantis imposed there was a condition that limited your

19    access to the Erie County Courthouse and that you would be

20    permitted there only to conduct business, to testify as a

21    witness, or to attend functions or go to non-court related

22    offices for personal matters.  And if you wanted to do any of

23    that, you had to give prior notice to your parole officer.

24    That's what the transcript indicates.

25         MR. BIERLEY:  I take exception to that, sir.  I

1  would say the transcript says that if I were conducting

2  personal business I was allowed to be there.  But this was

3  never given to me at all anyways.  I was put in prison and I

4  was never allowed to see any of this.

5           MS. BUTLER:  Your Honor, may I interject?  This is

6  Ms. Butler.

7           THE COURT:  Yes, go ahead.

8           MS. BUTLER:  First and foremost, Mr. Bierley was

9  convicted by a jury for the charges that were imposed upon him

10 over which Judge DiSantis presided.  The transcript that is

11 attached to Mr. Carey's motion to dismiss I believe

12 specifically states that Mr. Bierley was in the courtroom, in

13 fact heard the instructions from the Court, and Mr. Bierley

14 attaches Judge DiSantis' notice to his complaint.  How can he

15 say he never had it?

16          MR. BIERLEY:  May I answer that?

17          THE COURT:  Yes, go ahead, Mr. Bierley.

18          MR. BIERLEY:  I was supposedly required to take a

19 Public Defender who didn't do his job correctly.  He never

20 allowed me to see any part of the transcript.  I was so sick

21 that day I couldn't even speak because I had and I am trying

22 to get over serious sinus and throat problems and such.  And I

23 still maintain from reading the transcript that it does not

24 say I was not allowed there without permission for my own

25 business, but, nevertheless, the memo that I got come about in

1  this manner.  I went down there to conduct my business, and I

2  was, and he came in and ordered me out.

3           And I told him, sir, on what ground are you

4  ordering me out of here?

5           And he told me on the ground of an order by Judge

6  DiSantis.  It was told to the sheriff and his boss and

7  lieutenant, Mr. -- oh, brother, I am getting excited --

8  Lieutenant Brandon, and I had to leave immediately.

9           And I again asked him, I said, well, where's a copy

10 of this item, I have never seen this.  And I asked him, I

11 said, if you're going to serve an arrest warrant, don't you

12 have to give me a copy of the complaint?

13           Oh, yes, I do.

14           And do you have a copy of this complaint?

15           No, sir; but I will make sure you get a copy of it

16 soon.

17           And so after I got the name, Steve Brandon's first

18 name and Erik Christensen's name, because I didn't know the

19 name of my parole officer yet, I left there.

20           And another thing, sir, I am not on parole.  This

21 is a fictitious thing set up by Judge DiSantis to cover his

22 buns because on December 28th after I compelled him through my

23 habeas corpus in federal court to obey the Rule 601, I believe

24 it is, or Pennsylvania Rules of Criminal Procedure to give me

25 bond pending appeal -- because under the circumstances the

1    statute did not say that it was a matter of discretion for the

2    judge or for anything that had less than three years of total

3    sentence time, it said it was to be given.  But I do not

4    remember, I did not remember because I was so darn sick

5    exactly what was said, but I have read that sentencing

6    transcript and it said, Mr. Bierley will be allowed there to

7    take care of his own business.

8            But the memo, I found out about the memo after I

9    come home because the first thing I did when the Missus was

10   with me was to stop at the Federal Courthouse, which is less

11   than a block away, and get a copy of that pro se packet

12   because I was so mad I could spit fire balls, and I came home.

13   When I come home, the first thing I did was call Sheriff

14   Bernstein.  And Sheriff Bernstein informed me -- I am sorry,

15   not Sheriff Bernstein -- do you have anything in the order,

16   please check again because there is mistake here somewhere.

17   He checked it all over; he said, no.

18           So I called Sheriff Merski and talked to him and

19   asked him, do you have such an order?

20           And he said, yes, I do, it's here in my hands.

21           I said, would you please read it to me.  And he

22   said -- he read me the exact memo.

23           Then I was put in touch with Erik Christensen, who

24   I had sent an order -- not an order -- to show up at the

25   parole office on something like the last week of February.  I

1  received a phone call from Erik Christensen requiring me to be

2  there the following Monday.  He said, I will give you a copy

3  of that memo to get rid of the confusion or whatever.

4          All I said to him was, sir, I don't have any

5  confusion, sir, I just don't -- have never seen this thing in

6  the first place; and in the second place, where would a judge

7  get a right to order a man out of a courthouse so he cannot

8  conduct his legal business.

9          THE COURT:  Mr. Bierley, just please slow down a

10  little.  I think you are going --

11          MR. BIERLEY:  I am sorry, I am inclined to speed

12  up, I am sorry.

13          When I went to see Mr. Erik Christensen, however,

14  it was about mid-morning on Monday, he handed me the copy of

15  the memo that you see on my amendment, and that's one of the

16  reasons I did the amendment, to include that so I can say,

17  here it is, here's the memo.  But until the time Mr. Erik

18  Christensen handed me that memo, I had never seen it, sir.

19          THE COURT:  All right.  I appreciate that.  And I

20  can appreciate that you are upset with what Judge DiSantis did

21  to you.  I understand that you have a quarrel with that.

22          MR. BIERLEY:  Oh, yes, sir.

23          THE COURT:  But I should also state for the record:

24  Because you're a pro se litigant I am able to give you some

25  leeway here in federal court.  I am not required to hold you

1    to the same standard of pleading that a lawyer would be held.

2    However, what I am not allowed to do is ignore the

3    law.  I am not allowed to give you legal advice and I am not

4    allowed to treat you more favorably than somebody else who is

5    represented by counsel.  Do you understand that, sir?

6    MR. BIERLEY:  Yes, sir.

7    THE COURT:  Okay.

8    MR. BIERLEY:  There is no argument against that

9    because if I have to handle it myself, then I am going to have

10   to do it the best way possible and try to obey the rules.  And

11   I think I have done that.

12   THE COURT:  Yes, you have.  No, your papers are

13   understandable and you seem to be a very articulate gentleman

14   and I appreciate that.

15   Nevertheless, when I look at your complaint and

16   your amended complaint, it's clear that the gravamen of your

17   claim is that you want to undo what Judge DiSantis did to you.

18   MR. BIERLEY:  No, sir, the gravamen of my complaint

19   for that particular instance is to -- well, if you say undo,

20   to undo the order against me depriving me of the right to go

21   to the courthouse and do what I please in the law library when

22   I have been doing that for years now.  And even if I do want

23   to do something to help somebody else, I don't feel he has any

24   business telling me I can't do that, sir.

25   THE COURT:  Right, that's why I say your dispute is

1    with that order.  There's no doubt in my mind, the record is

2    clear here when I look at the transcript of your sentencing in

3    front of Judge DiSantis, and I will quote from it directly on

4    Page 12 of the transcript --

5              MR. BIERLEY:  I have got it.

6              THE COURT:  Judge DiSantis says, and I quote:  Now,

7    there's a couple other conditions of his parole that I want to

8    advise the Probation Office of.  During the time that he's on

9    parole Mr. Bierley will only be allowed access to this

10   courthouse under the following conditions:

11             He may be here on official business, for instance,

12   if he's here filing papers on behalf of himself related to a

13   case.  Obviously I will accept no pro se motions regarding

14   this case.

15             If he's here, if he's subpoenaed as a witness in a

16   case and has to be here, if he has to come to court to attend

17   any functions or go to any of the offices here other than the

18   court offices for any personal matters that he would have to

19   attend to, such as voter registration.

20             However, he may not be here simply to observe

21   trials or do any other things without permission of the Court.

22   And the way that will be handled during that 11 months is

23   that, Mr. Bierley, if you want to come to court for some

24   reason, you're to advise your parole officer.  Your parole

25   officer has the guidelines.

1          MR. BIERLEY:  Okay, sir.  First off, it says I may

2    not be there to observe trials or other things of that sort,

3    which do not fit into the list you just mentioned.  I was

4    there on the list you just mentioned ahead of it, taking care

5    of my own business.  And I have never been allowed to see this

6    transcript and no order, no order was ever issued effective

7    from this sentencing, so how did I know this?

8          THE COURT:  Well, I don't quarrel with you that you

9    may not have been in the best of health at the time of the

10   sentencing, et cetera, and perhaps you didn't even remember

11   this portion.  But the record is clear that Judge DiSantis

12   ordered verbally from the bench that you would need to advise

13   your parole officer if you wanted to come to court for some

14   reason.

15          So, again, I'm not going to get in the middle of

16   your dispute with Judge DiSantis, that's between you and the

17   Court of Common Pleas of Erie County.  But for purposes of the

18   federal case, I have no subject matter jurisdiction over that

19   dispute because, under the Rooker/Feldman Doctrine, I cannot

20   review state court adjudications or evaluate constitutional

21   claims that are inextricably intertwined with the decision of

22   a state court.  A federal district court should not assume

23   jurisdiction where the relief requested in the federal action

24   would effectively reverse the state decision or void its

25   ruling.

1          And the citation for that is Gulla, G-U-L-L-A,

2    versus North Strabane.  That can be found at 146 F.3d, 169.

3    That's a decision from the Court of Appeals for the Third

4    Circuit in 1998.

5          Here it's clear that the claims that you have made,

6    Mr. Bierley, are inextricably intertwined with the issues that

7    have already been decided in the prior state adjudication,

8    namely, the trial, conviction, and sentencing that you

9    underwent in Judge DiSantis' court.  So were I to grant you

10   the relief that you seek here, I would effectively reverse

11   Judge DiSantis' prior rulings, and that is something that I do

12   not have jurisdiction to do.

13         With respect to your Section 1983 claims,

14   Mr. Bierley, you do not allege that you are a member of a

15   protected class.  Now, if you are an African American or a

16   minority, then I will give you leave to amend your complaint.

17   But if you are not a member of a protected class for racial or

18   other reasons, then you cannot state an equal protection claim

19   under Section 1983.

20         MR. BIERLEY:  May I speak then?

21         THE COURT:  Yes, go ahead.

22         MR. BIERLEY:  No. 1, if I wanted to take special

23   classification, I would be under the classification of one

24   wrongfully accused of having serious psychiatric problems and

25   being very much bothered and disturbed to try to force me to

1    do something really out of sorts and could give them a chance

2    to put me in jail again, that's No. 1 of what I would say.

3            No. 2 is you were wrong about Rooker/Feldman, sir,

4    because this memo does not have any docket number on it

5    whatsoever; and although it may be considered to be related to

6    1133, it is not a document from CP 1133 of '03.  It is not

7    recorded in the Clerk's Office.

8            THE COURT:  What document are you talking about,

9    the memo do you mean?

10           MR. BIERLEY:  Yes.

11           THE COURT:  I am not relying on the memorandum

12   notice for my decision.  I am relying upon the transcript of

13   the sentencing, which clearly is part of your criminal case.

14           MR. BIERLEY:  Okay, sir, but there is still one

15   other thing.  It is very important.  It says a parole officer,

16   but I got out of jail on bond.  And there was never a hearing

17   held as required by the rule of criminal procedure to revoke

18   that bond when on January 24th the judge issued a fictitious

19   order ordering me parole.  Can I be on parole and on bond at

20   the same time?

21           THE COURT:  I am going to assume with you, for the

22   sake of argument, Mr. Bierley, that the state court judge made

23   a mistake, okay, I am going to grant you that as an

24   assumption, okay.

25           MR. BIERLEY:  I understand.

1          THE COURT:  Your relief, when the state court judge

2    makes a mistake of that nature, is to take him up on appeal to

3    the Superior Court.

4          MR. BIERLEY:  The next higher court.

5          THE COURT:  That's the Superior Court.  Not the

6    federal district court.

7          MR. BIERLEY:  Right, to the Superior Court in this

8    case.  Which, sir, I was denied that by the Public Defender

9    who was assigned to my case.  He didn't do a thing with that.

10   He didn't mention a case law that specifically says that the

11   particular incident as it were was not even a crime by

12   Pennsylvania law, namely Commonwealth versus Kelly.  He did

13   not mention any of my case laws which I got which showed in

14   the case of disorderly conduct in the courtroom it had to be

15   within hearing distance of the judge or some such thing.  And

16   the judge in this case, whose courtroom is where it occurred

17   in, claimed in a letter, which is in the record, states, I did

18   not hear anything, I did not see anything, therefore I refuse

19   to testify at your trial.

20         THE COURT:  Again, Mr. Bierley, those are issues

21   that you can take up in the state court.

22         Ms. Butler, did you wish to say something?

23         MS. BUTLER:  Yes, I did, Your Honor, thank you.  As

24   a matter of fact, Mr. Bierley has filed an appeal of Judge

25   DiSantis' order with the Superior Court and he most recently

1    on May 5th, 2005, filed his brief.  The brief on behalf of the

2    Commonwealth is not due until June 6th.  That's still an

3    ongoing proceeding.

4             So Mr. Bierley is well aware of what his avenues

5    are for recourse against an order that he feels was wrong by

6    Judge DiSantis, and he is doing that.

7             THE COURT:  That is pending right now?

8             MS. BUTLER:  Yes, it is, I have the dockets right

9    in front of me.  The number in the Superior Court is 78 WDA

10   2005.

11            MR. BIERLEY:  And --

12            MS. BUTLER:  And the related one?

13            MR. BIERLEY:  Yes.

14            MS. BUTLER:  See, that's what I am saying.  You are

15   very well aware what you have to do.

16            MR. BIERLEY:  Yes, I am, Your Honor --

17            MS. BUTLER:  Wait just a second.  The other one is

18   1519 WDA 2004, and I also have what you filed in the Supreme

19   Court for extraordinary relief.  All of them stemming from the

20   order that Judge DiSantis issued, and the number for the

21   Supreme Court is 87 WM 2003, but that matter is closed because

22   your application for extraordinary relief was denied on

23   June 24th, 2004.  So you are well aware, Mr. Bierley, of what

24   it is you need to do to appeal Judge DiSantis' order.

25            MR. BIERLEY:  Ma'am, there is a mistake in what you

1   said.  The 1519 WDA 2004 does not stem from the orders on this

2   conviction.

3              MS. BUTLER:  Well, according to what I have in

4   front of me, which I received from the Superior Court, it's

5   concerning the disorderly conduct charge that the jury

6   convicted you on, and the docket number is the lower court

7   docket number, CP 1133 of 2003.  That's the other information

8   I received from Superior Court.

9              MR. BIERLEY:  But that was on a denial of Rule 600

10  relief.

11             MS. BUTLER:  In any event, Your Honor --

12             THE COURT:  That's all right, I get the point on

13  that.  Let me continue to explain my ruling to Mr. Bierley.

14             With respect to the sheriff's office Defendants,

15  Mr. Bierley, and the probation officer, Christensen, these --

16             MR. BIERLEY:  Pardon me, I didn't catch a couple

17  words there.

18             THE COURT:  The sheriff's office Defendants and

19  probation officer Christensen, they are entitled to qualified

20  immunity because their actions were objectively reasonable and

21  did not violate any clearly established right of which a

22  reasonable person would know.  The citation for that is Harlow

23  versus Fitzgerald, a case decided by the Supreme Court in 1982

24  and reported at 457 US 818.

25             These Defendants had been instructed by Judge

1   DiSantis to restrict Mr. Bierley's access to the courthouse

2   and they had no reason to believe that this instruction was

3   clearly violative of any of Plaintiff's constitutional rights.

4   Therefore, ordering the Plaintiff to leave the premises was

5   objectively reasonable.

6          Now, again, Mr. Bierley, I understand that you

7   disagree with Judge DiSantis' memorandum.  I understand that

8   you disagree with his order to limit your access to the

9   courthouse except upon prior notification to your parole

10  officer.  So I am not challenging that.

11         What I am telling you is that that's an issue that

12  is between you and the state court, and Rooker/Feldman bars me

13  from looking into that issue.

14         The last point I need to make is that the doctrine

15  of judicial immunity mandates the dismissal of Judge DiSantis

16  from this case.  Judges are immune from liability when they

17  possess jurisdiction over the subject matter and they are

18  performing judicial acts under Stump versus Sparkman.

19         MR. BIERLEY:  I know that one.

20         THE COURT:  435 US 349, decided in 1978.  Immunity

21  applies regardless of whether the actions complained of are

22  alleged to have been in error, performed with malice, or were

23  outside the judge's authority.

24         As you can see, judicial immunity is very broad,

25  Mr. Bierley, and I am not suggesting you need to agree with

1   that law, but, nevertheless, it is the law from the Supreme

2   Court that I must follow.

3            MR. BIERLEY:  Yes, sir.  My question, though,

4   doesn't there have to be jurisdiction?

5            THE COURT:  Let me just finish, then I will give

6   you a chance.

7            Here there is no question that Judge DiSantis

8   possessed jurisdiction --

9            MR. BIERLEY:  There is, sir.

10           THE COURT:  -- over Mr. Bierley's criminal trial

11  and sentencing and he was performing a judicial act in

12  imposing the courthouse restrictions as a condition of

13  sentencing.  That Mr. Bierley maintains these conditions were

14  outside the judge's legal authority or were constitutional

15  error does not deprive Judge DiSantis of the protection of

16  judicial immunity.

17           And like the other issues that I have mentioned,

18  Mr. Bierley, if you think that Judge DiSantis lacked

19  jurisdiction or the sentence that he imposed upon you was

20  somehow illegal, you are free to challenge that judicial act.

21  You are free to challenge his exercise of judicial power

22  through the state court system.  But that's not a matter that

23  is cognizable before me in federal court.

24           Now I will give you a chance to respond, sir.

25           MR. BIERLEY:  Well, the matter of challenging was

1  done in state court and he denied me any answer to my motion

2  for dismissal in the form of a habeas corpus in the Common

3  Pleas Court as required by the new rules in the Pennsylvania

4  Rules of Criminal Procedure and he claims it was out of time.

5           It was not out of time, sir.  The time to do a

6  motion to dismiss is as soon as you have the material to get

7  it, and it was done properly.  And the man does not have a

8  sworn affidavit of criminal complaint or arrest warrant,

9  therefore, the man never had jurisdiction of me on subject

10 matter or in personam for a criminal act.

11          THE COURT:  Again, those are issues you can

12 litigate in the Superior Court.  I understand you have a case

13 pending there and I am not going to get in the middle of that.

14 You can raise those arguments there.

15          I haven't heard anything from Mr. Carey, and I

16 don't want to presuppose that you have to add anything based

17 upon my rulings, but I want to give you an opportunity to

18 speak if you wish, Mr. Carey.

19          MR. CAREY:  Against my better judgment I will say

20 something.  Your Honor, I believe that the Court has hit the

21 nail on the head with respect to every issue.  And I believe

22 that all of these defenses were properly raised in my motion

23 and brief.

24          I also believe that the crux of the Plaintiff's

25 complaint in this matter is the constitutionality of the

1    sentence he received from Judge DiSantis, and this Court lacks
2    jurisdiction to do anything further with it.

3            With respect to the qualified immunity, I wanted to
4    throw in a comment.  In addition to the sheriff's deputies and
5    the parole officer, in addition to their actions being
6    objectively reasonable, I would like to state that I believe
7    that they were also very restrained.  Under the circumstances,
8    they didn't file charges, they didn't place Mr. Bierley under
9    arrest, and they didn't seek to revoke his parole or probation
10   for violating any condition thereof.  I think what they did
11   was reasonable under the circumstances.  So that's all I
12   wanted to add today.

13           MR. BIERLEY:  Sir.

14           THE COURT:  Go ahead, Mr. Bierley.

15           MR. BIERLEY:  Page 13 of the sentencing transcript,
16   last full sentence:  Your parole officer has the guidelines.
17   You will not have to contact me if it is on official business.
18   But if they are for purposes of simply coming into court to
19   accompany friends and those kinds of things, then he will need
20   my permission.

21           Now, there it clearly states that the only
22   restrictions on me was when I was there for anything other
23   than my own business, and I was there for my own business,
24   sir.

25           THE COURT:  I agree with what you just read,

1   Mr. Bierley, but right before that Judge DiSantis made it

2   clear that if you wanted to go to court for some reason, you

3   had to give prior notice to your parole officer.

4          So I agree with you you didn't have to notify Judge

5   DiSantis, but you did have to notify your parole officer.

6          MR. BIERLEY:  It's the same difference there, sir,

7   the way that's written.  Either him or the parole officer.

8   It's the same difference.  I don't understand how you are

9   making a difference on it.

10         THE COURT:  Well, I think there's a distinction

11  between the judge and the parole officer.  I think that's

12  where we are disagreeing, Mr. Bierley.

13         MR. BIERLEY:  Well, sir, I have a right to file a

14  motion for reconsideration or I can just read to you now three

15  handwritten pages to state there is no jurisdiction and you

16  are wrong.

17         THE COURT:  I don't think that would be fair to the

18  Court Reporter here because it is a little difficult to

19  transcribe things over the phone.  So I think I have made

20  clear the reasons for my ruling on the record, Mr. Bierley.

21  Again, I sympathize with your plight.  I am not going to give

22  you leave to amend your complaint because you said that your

23  psychiatric condition would be the basis for an equal

24  protection claim, and that simply under the law is not

25  recognized as any kind of a suspect classification.  I can

1    appreciate why you might suggest that it should be a suspect

2    classification, but under current law it is not.

3            MR. BIERLEY:  More to it than just that, sir.

4            THE COURT:  Well, what I am going to do is I am

5    going to enter the order dismissing the case with prejudice

6    for the reasons I've stated on the record.  I wish you well in

7    your state court appeal, Mr. Bierley.  As I have made clear on

8    the record, you have every right to pursue that remedy, and

9    Ms. Butler has made clear that you have availed yourself of

10   that right.

11           MR. BIERLEY:  Sir.

12           THE COURT:  If you wish to file a motion for

13   reconsideration of the order that I am going to enter, then

14   that is perfectly fine.  You're more than welcome to go ahead

15   and file the three-page motion that you have drafted.  I will

16   study it carefully and if I have misunderstood anything or

17   missed anything based upon your motion for reconsideration,

18   then I will reverse myself.

19           I have on occasion granted motions for

20   reconsideration.  It is unusual because we try to get it right

21   the first time and we try to study things very carefully ahead

22   of time, but I will give very careful consideration to

23   whatever motion for reconsideration you wish to file.  All

24   right?

25           MR. BIERLEY:  Well, sir, would it matter if there's

1    a long history of abuse of the process such as has happened on

2    1133 against me, and every time they have taken me down to the

3    concrete court for the charge against me there was similar

4    abuse of process, such as no arrest warrant, such as no sworn

5    affidavit of complaint by someone with firsthand information,

6    and such as a cop busted into my house on my first offense,

7    punched me in my face, and I got arrested, charged with

8    assaulting a police officer.  And my Public Defender lawyer at

9    that time didn't even go through with the demurrer where he

10   asked, well, did you have an arrest warrant?  No, I did not,

11   sir.  That is the kind of thing I have been subjected to

12   constantly and in federal court they have constantly refused

13   to help me.

14          On the second matter, the man who assaulted me was

15   in a gang and actually committed perjury, his friend committed

16   perjury, his mother committed perjury, and the Judge knew they

17   committed perjury, and the federal court absolutely has

18   refused to come out and give me the documents I need to prove

19   it.

20          Now, this is the kind of history, and I could go

21   on, but that's the kind of history that I'm up against.  And

22   in this court now, you, Judge Hardiman, are denying me the

23   same kind of access to finally get something resolved to stop

24   the Nazi dictators downtown in the courthouse from treating me

25   like a platycyte or whatever kind of slave I am, because I am

1    a slave to them.  I have no rights.  And this was the final,

2    this was the final insult.

3           I don't even have a right to go down there and use

4    the law library or go down to the Clerk's Office or go down to

5    the Prothonotary and take care of my own business without

6    somebody's permission when I am not even on legal parole.  I

7    am not bond, the bond was never revoked.  It was not

8    generosity on the part of the sheriff or parole officers to

9    not revoke my bond.  There had to be a hearing.  And when the

10   hearing would come, then I would have discussed the

11   possibility of 12 or 14 Rules of Criminal Procedure that were

12   definitely violated, and the fact that I was in prison in the

13   first place again was a violation of Rules of Criminal

14   Procedure, and this is the mess I have been living with since

15   1986.

16          THE COURT:  Well --

17          MR. BIERLEY:  Because these people in Erie County

18   Courthouse are not in any manner fair.  No way could they be

19   said to be fair.  And the arguments of immunity don't cut it,

20   sir, because these people are criminals.  They are

21   cotton-picking traitors to our system.  And they made it look

22   like I'm the traitor and I'm the troublemaker and I am

23   psychiatric.  Well, sir, I do get excited.

24          And also I want one thing I would like to stipulate

25   right now for the record, and I think I will add that to this

1    written appeal, if you still rule against me, is I do have

2    multiple speech problems, some are emotional from abuse when I

3    was young, several are from malformation in my mouth because I

4    have AS -- what was it, FAS, fetal alcohol syndrome.

5            And those things aside, I do have something called

6    an omega epiglottis.  Epiglottis, sir, means I go into a

7    singer's formant very easily if I get excited.

8            THE COURT:  You go into what?

9            MR. BIERLEY:  Singer's formant, F-O-R-M-A-N-T.

10   Singer's formant.  Like I do now.  And I have no control over

11   that.  But what is good about that, if I were a professional

12   singer, I don't have to practice to make my voice carry

13   because as soon as I get eager about something, I get anxious

14   about something, or I get surprised I'm there.

15           And they are claiming it is psychiatric problems

16   for something that was physical, and that was put into the

17   record by me on my second offer of proof.

18           THE COURT:  Again, Mr. Bierley, if there was any

19   error in the Erie County Common Pleas Court's jurisdiction, if

20   there was an error with respect to the arrest warrant or your

21   parole or your bond, I'm willing for purposes of this

22   discussion and this argument here to assume that you are

23   correct on that, sir.  But if you are correct on that, there's

24   nothing I can do, I have no jurisdiction to make that ruling.

25   That's a remedy that you're going to have to obtain from the

1    Superior Court.

2             So I wish there was something I could do to make

3    you feel that you were having your day in court, but the

4    federal courts are courts of limited jurisdiction.  And I have

5    an oath to uphold to the Constitution and I cannot just grab

6    jurisdiction in a case where I don't have it.

7             And what you're complaining about here, I

8    understand that you feel you were wronged by the Erie County

9    Court, and you have every right to try to get what Judge

10   DiSantis did overturned by the Superior Court, and that's a

11   case that's pending there and that's a decision that they are

12   going to make one way or the other.  I am not going to predict

13   whether you're going to win or lose.  I have no idea how

14   that's going to come out.  And it's not material to my work

15   here in the federal court as to how that's going to come out.

16            Do you understand?

17        MR. BIERLEY:  Sir, my rights are being violated.  I

18   am being criminally persecuted.  I have been criminally

19   persecuted for a long, long time, and the reason is because I

20   am one of the members of the class that dare to speak back to

21   these people.  And that is a class action in itself.

22        THE COURT:  All right.

23        MR. BIERLEY:  Dare to speak back to them, that is

24   why they want -- they sent a cop up there one night, lied to

25   them and said I struck my daughter at school.  He didn't have

1  an arrest warrant and busted into the house; and when he

2  busted into the house, he knocked me over.  I stood up and he

3  beat me up like hell and I got blamed for striking a police

4  officer.  I will never admit I was wronged when that happened.

5          I will not admit the second time around when I know

6  they used perjury to get a conviction on me.  And they will

7  not give me the medical records of that man because he was

8  only 15 then.

9          Neither one of these is right to deny me the

10  documents which I can take with the cotton-picking Court

11  transcripts and show perjury was committed.

12          In addition to that, on that incident, just like

13  this, there was no sworn affidavit of criminal complaint, sir.

14  There was no arrest warrant.  And there was not even a

15  preliminary hearing on that one.

16          THE COURT:  All right.  Ms. Butler, do you have

17  anything further at this time?

18          MS. BUTLER:  Nothing, Your Honor, thank you.

19          THE COURT:  Okay.  Mr. Carey, anything further?

20          MR. CAREY:  No, Your Honor.

21          THE COURT:  Okay.  Mr. Bierley, I have done the

22  very best I can to give you every opportunity to speak.  You

23  are a very articulate man.  I understood everything you said.

24  I understand your plight and your arguments.  I am sorry that

25  you feel that you're being persecuted by the Court of Common

1    Pleas up there, but I am obliged to follow the law here and

2    that's why I have to enter an order dismissing your case.

3              Again, if you wish to seek reconsideration of my

4    order, I will study your motion for reconsideration very

5    carefully.  All right, sir?

6              MR. BIERLEY:  How long do I have to have this in?

7              THE COURT:  Ten days, sir.

8              MR. BIERLEY:  Can you give me an extension of time

9    right now since I am inundated with problems?

10             THE COURT:  Certainly.  How much time do you need?

11             MR. BIERLEY:  I would like a 30-day extension, a

12   total of 40 days.

13             THE COURT:  I can give you a total of 30.

14             MR. BIERLEY:  You can give me a total of 30.  That

15   will help.

16             THE COURT:  All right.

17             MR. BIERLEY:  I will submit a motion for

18   reconsideration, sir.  What date will it be due?

19             THE COURT:  That will be due June 24th.

20             MR. BIERLEY:  June 24, '05.  Okay, sir.

21             THE COURT:  I will study it carefully, but please

22   keep in mind I am not an appellate court that reviews the work

23   of the Erie County Common Pleas.  I am limited in my

24   jurisdiction.  So please try to focus your arguments in your

25   motion for reconsideration with that in mind.

1          All right, sir?

2          MR. BIERLEY:  I already did when I wrote this piece

3  of paper up that I have in front of me, sir.

4          THE COURT:  Okay.  All right.  Thank you, good day

5  everybody.

6          (Record closed).

7

8

9

10

11                *       *       *       *       *

12

13

14

15

16              C E R T I F I C A T E

17          I, Richard T. Ford, certify that the foregoing

18  is a correct transcript from the record of proceedings in the

19  above-titled matter.

20  _____

21  Richard T. Ford

22

23

24

25